ACCEPTED
15-25-00122-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/9/2026 4:32 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00122-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/9/2026 4:32:06 PM
CHRISTOPHER A. PRINE
Clerk

IN THE

COURT OF APPEALS

FOR THE FIFTEENTH JUDICIAL DISTRICT

_____

STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, AND ALAN CRIDER,
*Appellants*,

v.

CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, IN HER OFFICIAL CA-
PACITY AS THE INTERIM CITY MANAGER FOR THE CITY OF DAL-
LAS, AND THE STATE FAIR OF TEXAS,

*Appellees.*

_____

ON APPEAL FROM THE 298TH JUDICIAL DISTRICT COURT,
DALLAS COUNTY

_____

## BRIEF OF APPELLEE STATE FAIR OF TEXAS
_____

Robert B. Smith
State Bar No. 00786248
3838 Oak Lawn Avenue
Suite 1000
Dallas, Texas 75219
(214) 522-5571
(214) 522-5009 (Fax)

James B. Harris
State Bar No. 09065400
Bryan P. Neal
State Bar No. 00788106
Dina W. McKenney
State Bar No. 24092809
HOLLAND & KNIGHT LLP
1722 Routh Street
Suite 1700
Dallas, Texas 75201
(214) 969-1700
(214) 964-9501 (Fax)

COUNSEL FOR STATE FAIR OF TEXAS

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:**              State of Texas

**State's Counsel:**       Ernest C. Garcia
ernest.garcia@oag.texas.gov

Canon Parker Hill
canon.hill@oag.texas.gov

Melissa Juarez
melissa.juarez@oag.texas.gov

Steven Ogle
Steven.Ogle@oag.texas.gov

Patrick Todd
Patrick.todd@oag.texas.gov

Alexander Comsudi
alexander.comsudi@oag.texas.gov

Keegan J. Howe
keegan.howe@oag.texas.gov

Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1838

**Individual Appellants:**  Maxx Juusola, Tracy Martin, and Alan Crider

**Individual Appellants' Counsel:**    Tony K. McDonald
tony@tonymcdonald.com

Connor Ellington
connor@tonymcdonald.com

The Law Offices of Tony McDonald
1308 Ranchers Legacy Trail Fort
Worth, Texas 76126

**Appellees:**    City of Dallas and Kimberly Tolbert in her official capacity as Interim City Manager for the City of Dallas:

**Appellees' Counsel:**    Jeffrey Tillotson
jtillotson@tillotsonlaw.com

Anne M. Johnson
ajohnson@tillotsonlaw.com

Megan M. Coker
mcoker@tillotsonlaw.com

Nathaniel D. Buchheit
nbuchheit@tillotsonlaw.com

Tillotson, Johnson & Patton
1201 Nain Street, Suite 1300
Dallas, Texas 75202

**Appellee:**    State Fair of Texas

**Appellee's Counsel:**        James B. Harris
Jim.Harris@hklaw.com

Bryan P. Neal
Bryan.Neal@hklaw.com

Dina W. McKenney
Dina.McKenney@hklaw.com

Cole Browndorf
Cole.Browndorf@hklaw.com

Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

Robert B. Smith
robert@smith-firm.com

3838 Oak Lawn Avenue, Suite 1000
Dallas, Texas 75219

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel ..................................................................ii

Table of Contents ................................................................................. v

Index of Authorities..................................................................................

Statement of the Case ........................................................................... 1

Statement Regarding the Record............................................................ 2

Statement Regarding Oral Argument .................................................... 2

Issues Presented..................................................................................... 3

Introduction ........................................................................................... 4

Statement of Facts ................................................................................. 7

I.     Factual Background ...................................................................... 7

II.    Procedural Background............................................................... 12

Summary of the Argument ................................................................... 15

Argument.............................................................................................. 18

I.     Relevant Legal Standards Regarding Firearms........................... 18

    A.     Legal Background on Firearms Laws and Related
    Trespassing Provisions. ..................................................... 18

    B.     The OAG Previously—and Correctly—Agreed that
    Section 411.209 Does Not Apply to Decisions Like that
    of SFOT Because Property Law Allows Private Parties
    (such as SFOT) to Exclude Those with Firearms from
    Property They Control. ........................................................26

II.    The State No Longer Advances Three of Its Four "Causes of
Action," Leaving Only the Section 411.209 Claim. .......................33

III.   The Court Should Dismiss the Individual Appellants'
Appeal, As They Have No Claim Under Section 411.209. ............35

IV.    The Court Should Affirm the Trial Court's Grant of
Summary Judgment in Favor of the Appellees ...........................36

    A.     There Was No Violation of Section 411.209. ........................36

1. The City did not "take any action" prohibited by section 411.209. ................................................. 36

2. The State's "take action" theories lack merit. ............. 39

B. The Trial Court Correctly Excluded Evidence of SFOT Mistakenly Preventing a Peace Officer from Entering a Previous Fair. .................................................................. 50

Conclusion and Prayer ....................................................................... 55

Certificate of Compliance ................................................................. 57

Appendix

A – Order Denying Plaintiffs' Motion for Summary Judgment (CR2:937) .............................................................................. Tab A

B – Order Granting SFOT's Motion for Summary Judgment and Sustaining Evidentiary Objections (CR2:938-39) .................... Tab B

C – Order Granting the City and Kimberly Bizor Tolbert's Motion for Summary Judgment (CR2:942) ........................................ Tab C

D – Texas Government Code Section 411.209 ................................. Tab D

E – Tex. Att'y Gen. Op. KP-0108 (2016) (CR1:153-56). .................... Tab E

F – Firearms Statutes Chart .......................................................... Tab F

# INDEX OF AUTHORITIES

## Cases

*BPX Operating Co. v. Strickhausen,*
629 S.W.3d 189 (Tex. 2021) ................................................................ 41

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
531 U.S. 288 (2001) ............................................................................. 34

*Craig v. Mixon,*
No. 07-97-0350-CV, 1998 WL 466133 (Tex. App.—
Amarillo Aug. 11, 1998, pet. denied) ............................................ 30, 44

*Entergy Gulf States, Inc. v. Summers,*
282 S.W.3d 433 (Tex. 2009) ........................................................... 31, 36

*Fla. Retail Fed., Inc. v. Att. Gen. of Fla.,*
576 F. Supp.2d 1281 (N.D. Fla. July 28, 2008) ................................. 45

*GeorgiaCarry.Org, Inc. v. Georgia,*
687 F.3d 1244 (11th Cir. 2012) .......................................................... 45

*Houle v. Capital One Bank (USA), N.A.,*
570 S.W.3d 364 (Tex. App.—El Paso 2018, pet. denied) .................... 51

*Johnson Cty. Sheriff's Posse, Inc. v. Endsley,*
926 S.W.2d 284 (Tex. 1996) ........................................................... 30, 44

*Kukis v. Newman,*
123 S.W.3d 636 (Tex. App.—Houston [14th Dist.] 2003, no
pet.) ................................................................................................ 30, 44

*Levesque v. Wilkens,*
57 S.W.3d 499 (Tex. App.—Houston [14th Dist.] 2001, no
pet.) ........................................................................................... 29, 30, 44

*Pacesetter Corp. v. Barrickman,*
885 S.W.2d 256 (Tex. App.—Tyler 1994, no writ) ............................ 54

*Paxton v. Garza,*
  No. 15-25-00116-CV, --- S.W.3d ----, 2025 WL 3764955
  (Tex. App. [15th Dist.] Dec. 30, 2025) ................................................38

*Republican Party of Tex. v. Dietz,*
  940 S.W.2d 86 (Tex. 1997) ................................................................34

*Rogers v. Bagley,*
  623 S.W.3d 343 (Tex. 2021) ..............................................................36

*Rundus v. City of Dallas and State Fair of Texas,*
  634 F.3d 309 (5th Cir.), *cert. denied,* 565 U.S. 821 (2011) ......... *passim*

*Satterfield v. Crown Cork & Seal Co.,*
  268 S.W.3d 190 (Tex. App.—Austin 2008, no pet.) ..........................43

*Severance v. Patterson,*
  370 S.W.3d 705 (Tex. 2012) ..............................................................45

*Smith v. Estill,*
  28 S.W. 801 (1894) .............................................................................41

*State of Texas v. The City of Dallas,*
  No. 15-24-00103-CV (Tex. App. [15th Dist.] Sept. 24,
  2024) ...................................................................................................13

*In re State,*
  698 S.W.3d 904 (Tex. 2024) .................................................... *passim*

*Tex. Dep't of Pub. Safety v. Saintes,*
  No. 15-24-00092-CV, 2025 WL 1710798 (Tex. App. [15th
  Dist.] June 19, 2025) ..........................................................................52

*Third Coast Servs., LLC v. Castaneda,*
  No. 23-0848, --- S.W.3d ----, 2025 WL 3558839 (Tex. Dec.
  12, 2025) .............................................................................................36

*Willis v. Donnelly,*
  199 S.W.3d 262 (Tex. 2006) ..............................................................40

## Statutes

Tex. Code Crim. Proc. Art. 2.1305 ............................................ 17, 22, 52

Tex. Gov't. Code § 411.171 ................................................................... 18

Tex. Gov't Code § 411.203 ............................................................ 25, 39

Tex. Gov't. Code § 411.209 ........................................................ *passim*

Tex. Gov't Code § 808.003 ................................................................... 38

Tex. Penal Code § 1.07(a)(35) ............................................................. 19

Tex. Penal Code § 30.05 ............................................................ 19, 22, 33

Tex. Penal Code § 30.06 ............................................................. *passim*

Tex. Penal Code § 30.07 ............................................................... 19, 20

Tex. Penal Code § 46.03 ...................................................... 15, 20, 21, 24

Tex. Tax Code § 142.009 ...................................................................... 38

Tex. Util. Code § 162.058 .................................................................... 38

## Rules

Tex. R. App. P. 44.1 ............................................................................ 55

Tex. R. Evid. 401 ................................................................................ 51

## Other Authorities

*Action*, CAMBRIDGE DICTIONARY,
https://dictionary.cambridge.org/us/dictionary/english/acti
on ...................................................................................................... 37

*Action*, COLLINS DICTIONARY,
https://www.collinsdictionary.com/dictionary/english/actio
n ....................................................................................................... 37

52 C.J.S. *Landlord & Tenant* § 328 (2024) .......................................... 45

ii

*Matthew R. Entsminger, Wrongful Exclusion of Concealed Handgun License Holder Complaint – No Violation,* Tex. Att'y Gen. (Nov. 10, 2016), https://www2.texasattorneygeneral.gov/files/opn/3006_letters/2016-11-10 ..................................................................... 28

*Possessory Interest, Black's Law Dictionary* (12th ed. 2024) ................. 44

*Ratification, Black's Law Dictionary* (12th ed. 2024) ............................ 40

*Take Action,* CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/take-action ................................................................................................. 37

Tex. Att'y Gen. Op. KP-0108 (2016) ............................................... *passim*

Tex. Att'y Gen. Op. No. KP-0240 (2019) ................................................ 29

Tex. Att'y Gen. Op. Req. RQ-0097-KP (2016) ................................... 26, 27

Tex. Att'y Gen. Op. Req. RQ-0558-KP (2024) ......................................... 28

Tex. S.B. 1065, 89th Leg. (Tex. 2025) .................................................... 46

## STATEMENT OF THE CASE

This is an action by the State of Texas (the "State") and three individuals (the "Individual Appellants") against the City of Dallas (the "City"), Kimberly Bizor Tolbert, in her official capacity as the then-Interim City Manager for the City of Dallas, and State Fair of Texas ("SFOT"). CR1:271-91. The State challenged SFOT's policy prohibiting firearms at the annual State Fair of Texas exposition in Dallas (the "Fair") and sought penalties and declaratory and injunctive relief. *Id.* After the parties cross-moved for summary judgment, the trial court (298th Judicial District, Dallas County, Texas) (1) denied the Appellants' motion for summary judgment, (2) granted the Appellees' motions for summary judgment, and (3) sustained the Appellees' evidentiary objections. CR2:937-42.

## STATEMENT REGARDING THE RECORD

The record on appeal consists of:

- the two-volume clerk's record filed in this Court on July 29, 2025, which will be cited as (CR[Vol.]:[page]);

- the one-volume supplemental clerk's record filed in this case on November 12, 2025, which will be cited as SCR:[page]); and

- the one-volume reporter's record filed in this Court on August 26, 2025, which will be cited as:
  - For portions of a hearing transcript, (RR, [page]); and
  - For non-paginated exhibits to a hearing transcript, (RR, [Ex.]).

## STATEMENT REGARDING ORAL ARGUMENT

In granting summary judgment in favor of the Appellees, the trial court applied a clear, unambiguous statute to undisputed facts. The facts are straightforward and the law is clear. Accordingly, SFOT agrees with the Appellants that oral argument is not necessary.

## ISSUES PRESENTED

- Whether section 411.209 of the Government Code prohibits those leasing property owned by a city from banning firearms in the absence of action by the city stating or implying that firearms are prohibited at the leased property; and

- Whether the trial court abused its discretion in excluding as irrelevant evidence that was of no consequence in determining whether section 411.209 of the Government Code had been violated.

## INTRODUCTION

The parties agree that this case turns on the meaning of section 411.209 of the Government Code. And they agree that the plain or ordinary meaning of the words used in that section control. They disagree about the plain meaning, with SFOT focusing on the actual text of the statute and the State focusing on public policy arguments and misguided contentions about what it asserts the Legislature meant to, but did not, say in the text. At bottom, the State, as it has throughout this litigation, advances a position that would require the Court to redraft the statute.

Section 411.209(a) makes it unlawful for a political subdivision, such as the City, to "take action...that states or implies [a licensed gun holder] is prohibited from entering or remaining on a premises or other place owned or leased by the [political subdivision]." The plain meaning of those words does not describe the actions of a private entity. They only describe a political subdivision *taking action*.

It is undisputed that SFOT is a private entity that operates a 24-day private event—the Fair—at Fair Park, which is owned by the City and leased to SFOT for use in SFOT's business: operating the Fair. It also is undisputed that it was SFOT alone that decided to prohibit firearms

4

at the Fair. The City of Dallas *took no action* that states or implies that firearms are prohibited at the Fair. It is not surprising then that the State's brief fails to identify any action that the City took to state or imply that firearms are prohibited, at least as the words "take" and "action" are ordinarily understood.

The State's brief instead largely repackages arguments previously rejected by this Court and the Supreme Court in an earlier interlocutory appeal. But those arguments fail to come to grips with the statutory text. The State's brief also fails to cite to the record in support of numerous purportedly factual statements. In addition—and much more problematic for an appellant seeking reversal of a summary-judgment decision, the State chose to file its brief without the evidentiary record presented to the trial court even being in the Clerk's Record. SFOT has now corrected that error. But its earlier absence means that the State cannot possibly have properly addressed the summary-judgment record, including sworn testimony that goes to multiple issues in the case such as the lack of any City involvement in adopting the policy at issue.

Finally, as to SFOT, the State still runs head-long into the main problem that now-Chief Justice Blacklock posed in his concurrence to the

denial of the State's prior petition for a writ of mandamus: it fails entirely to explain why, even if everything the State says about the City is correct, SFOT as a private entity cannot lawfully bar handguns from the property it controls, which is the result the State hopes to achieve in this litigation. *See In re State*, 698 S.W.3d 904, 904-905 (Tex. 2024) (Blacklock, J., concurring").

In the absence of the City taking action to state or imply that firearms are prohibited at the Fair, there can be no violation of section 411.209. There was no such action by the City. Accordingly, the district court correctly granted SFOT's motion for summary judgment and denied the State's motion.

## STATEMENT OF FACTS

### I. FACTUAL BACKGROUND[1]

SFOT is a private nonprofit entity. SCR:95:6-9. It organizes and operates the annual Fair. SCR:105:12-13. SFOT, or a predecessor entity, has done so for over 100 years. SCR:94:25-95:5. SFOT currently conducts the Fair on property, Fair Park, that the City owns and that it unconditionally allows SFOT to possess and control under a lease. SCR:99:16-100:16.

The Fair is a 24-day private event. SCR:94:16-95:9. During the time of the Fair, the grounds are gated. SCR:110:17-20. Fair Park is not an open "park" during that time period. *Id*. Admission requires a ticket and entry through one of the ticketing gates and security checkpoints. SCR: 106:25-107:2, SCR:110:17-20.

---

[1] At the summary-judgment stage, the parties agreed that they could use the evidence adduced at the hearing on the temporary injunction. CR1:296. In accordance with that agreement, SFOT filed a Joint Appendix Regarding Cross-Motions for Summary Judgment. That Joint Appendix was omitted from the initial Clerk's Record, and so was not present when the State filed its brief. SFOT then requested that it be added. It now is contained in the Supplemental Clerk's Record.

SFOT operates the Fair independently of any state agency or political subdivision. SCR:98:14-23. Every court that has reviewed the relationship between SFOT and the City—including as explained further below, the U.S. Court of Appeals for the Fifth Circuit—agrees. *See, e.g.*, *Rundus v. City of Dallas and State Fair of Texas*, 634 F.3d 309 (5th Cir.), *cert. denied*, 565 U.S. 821 (2011).

There is no overlapping leadership structure between SFOT and the City. SCR:96:11-97:24. None of SFOT's officers are City employees or officials or representatives of the City. SCR:96:17-25. SFOT is currently governed by a 20-person board of directors, none of whom are government employees, government officials, or government appointees. SCR:97:1-13. SFOT alone selects its board of directors without involvement by or approval from the City. SCR:97:14-24. The independently selected board of directors, not the City, oversees SFOT's decision- and policymaking functions. SCR:98:4-23.

SFOT's authority does not extend beyond its own operations. SCR:98:24-99:15. SFOT has no authority to enter into contracts on behalf of the City or otherwise take any actions on the City's behalf. SCR.98:24-99:5. SFOT is not an agent of the City, nor has the City delegated any of

8

its powers to SFOT. SCR:99:6-11. The only authority SFOT has with respect to Fair Park is its rights as a lessee of that land. SCR:99:12-15.

SFOT is financially independent of and does not receive any money from the City to host the Fair. SCR:111:25-112:5. In fact, SFOT pays substantial sums *to* the City. SCR.102:1-13. SFOT pays rent and other fees, makes certain tenant improvements in Fair Park, and provides funds to the City to pay for capital improvements in Fair Park, though only ones that benefit the Fair. *Id.*

SFOT likewise reimburses the City for the services it receives. SCR:106:2-21. For example, the Dallas Police Department ("DPD") maintains a significant presence at the Fair. SCR:105:20-22. SFOT fully reimburses the City for all DPD officers at the Fair, as well as, among other services, first responders such as Dallas Fire and Rescue. SCR:106:2-21.

SFOT leases Fair Park pursuant to an agreement with the City, known as the Fair Park Contract. SRC:99:12-19, 229. In all respects, the Fair Park Contract is an arms-length agreement, similar to a long-term commercial lease. SCR:130:21-132:4, 134:14-136:18, 229.

Pursuant to the Fair Park Contract, during the 24-day period of the Fair—the only time relevant for this lawsuit—SFOT takes occupancy,

possession, and control of all areas of Fair Park except for certain venues referred to as Cultural Facilities. SCR:115:10-14, 133:2-8. Those facilities are owned by the City but are leased to and operated by private organizations other than SFOT. SCR:100:17-101:13.

During the 24-day period of the Fair, SFOT's control over the leased property is *exclusive*. SCR:99:20-100:16. SFOT maintains complete control over the areas of Fair Park it leases, SCR:100:12-16; decides what persons to admit, not admit, or ask to leave those premises, SCR:109:15-110:5; pays for the utilities provided during the Fair, SCR:241-42; and receives all revenues generated by activities on the leased premises, SCR:103:2-10.

As part of that exclusive control, SFOT has independently developed policies governing conduct for fairgoers. SCR:107:13-108:2, 579. Those policies are posted at entrances to the Fair and on SFOT's website and are referenced on the backs of tickets for admission. SCR:107:13-108:18, 110:6-12, 577-79. Fairgoers agree to abide by SFOT's policies when they attempt to enter the Fair. SCR:579. SFOT retains the right to refuse to admit individuals that refuse to follow the rules of conduct. SCR:109:20-110:5, 579. The City has no involvement in determining who

10

SFOT allows to enter the Fair and had no influence in developing SFOT's conduct rules. SCR:109:20-110:16.

SFOT also does not rely on the City or its services to enforce SFOT's conduct rules. SCR:116:12-17. To be clear, DPD's role at the Fair is to keep the peace and enforce the laws and ordinances of the State and City. SCR:119:16-20. DPD does not enforce SFOT's conduct rules. SCR:116:18-21. SFOT does. SCR:116:12-17. Of course, when a violation of SFOT's conduct rules escalates into a violation of an applicable law or ordinance, DPD or other law enforcement officers respond accordingly. SCR:117:18-118:11. That is the very purpose of law enforcement.[2]

SFOT made the independent decision to prohibit fairgoers (other than active or retired peace officers or paid private licensed security personnel) from carrying firearms onto the fairgrounds. SCR112:6-114:2. That limitation applied only during the 24 days of the Fair, which began on September 27, 2024 and concluded on October 20, 2024. SCR:112:13-

---

[2] *See Rundus*, 634 F.3d at 312, 314 & n.6 (discussing police presence at the Fair and that the police do not enforce SFOT's rules).

11

19. SFOT does not dispute that this policy was still in effect for the 2025 Fair. *See* App'x 1 to State Br.

## II. PROCEDURAL BACKGROUND

On August 13, 2024, the Office of the Attorney General ("OAG") sent a letter to the City concerning SFOT's decision to prohibit firearms at the 2024 Fair as required before filing a lawsuit. SCR:220-21; s*ee* TEX. GOV'T CODE § 411.209(f). That letter threatened to "file suit to seek injunctive relief and collect civil penalties" if the City did not cure any alleged violation within fifteen days. SCR.221. On August 28, 2024, the City responded to the OAG's letter correctly indicating no violation of section 411.209 had occurred because the property at issue is leased to SFOT and SFOT alone had made the complained-of decision. SCR:222–23.

On August 29, 2024, the State filed this lawsuit. CR1:14-27. On September 19, 2024, the district court held an evidentiary hearing on the State's application for temporary injunction. SCR:7. During the hearing, witnesses testified on behalf of each party. SCR:11. The district court relied on counsel's arguments, the pleadings, responsive briefing, and the

12

evidence submitted. CR1:192. At the conclusion of the hearing, the district court signed an order denying the State's application for temporary injunction. *Id.*

The State appealed the denial of the temporary injunction to this Court, which denied the State's motion for an emergency temporary injunction order. CR1:193; Order, *State of Texas v. The City of Dallas*, No. 15-24-00103-CV (Tex. App. [15th Dist.] Sept. 24, 2024). The Texas Supreme Court denied the State's subsequent petition for writ of mandamus. *In re State*, 698 S.W.3d 904 (Tex. 2024).

In an opinion concurring in the denial of that petition, now-Chief Justice Blacklock, joined by former-Justice Hecht and Justice Young noted that the State had not explained *why* SFOT lacks the authority to prohibit guns at the Fair. *Id.* at 904 (J. Blacklock, joined by C.J. Hecht and J. Young, concurring). That opinion also noted that a 2016 Attorney General Opinion, discussed more fully below, had concluded that private parties leasing government property can exclude handgun carriers "by invoking the traditional authority of a tenant to control entry to the property and to exclude non-compliant visitors as trespassers." *Id.* And alt-

13

hough the 2016 Attorney General Opinion had been withdrawn, "withdrawing the Opinion is not the same thing as repudiating its analysis or explaining why it was wrong, which the State ha[d] not attempted to do in [the Texas Supreme Court]." *Id.*

Back in the trial court, the parties conducted no discovery and relied on the record from the temporary injunction proceeding in presenting cross-motions for summary judgment. CR1:296. As relevant to its appeal, the State sought to introduce evidence regarding a complaint it had received from an off-duty police officer in connection with the 2022 Fair. CR1:437-38, 440, 442-43. Because that complaint concerned a different statutory scheme not at issue in the litigation (one specific to peace officers as discussed below) and was not relevant to whether the Appellees had violated Section 411.209, the Appellees objected to that evidence. CR2:789-90, 812-20.

After a hearing (RR, 1) the trial court sustained SFOT's evidentiary objections and granted summary judgment in favor of the Appellees. CR2:937-42. This appeal followed. CR2:943-52.

14

## SUMMARY OF THE ARGUMENT

This case concerns a straightforward application of an unambiguous statute. The State alleges the City—and somehow SFOT as well—violated Texas Government Code section 411.209. That statute provides that governmental entities "may not take any action…that states or implies that a [firearm] license holder…is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity" other than property where carrying a handgun is independently unlawful. Tex. Gov't Code § 411.209(a); *see* Tex. Penal Code § 46.03(a).

The trial court correctly granted summary judgment to the Appellees. The City did not violate section 411.209. By its clear terms, the statute prohibits "taking any action…that states or implies that" firearms at not permitted at the Fair. But the State's theories for how the City violated this section are unconnected to the plain language of the statute. Indeed, although the State's brief *says* that it is applying the plain language of the statute, it instead relies on convoluted theories that treat inaction as action, misapply the term "implies" in a way that omits that what must be stated or implied is that license holders are prohibited from

15

entering or remaining on premises, and depend heavily on an incorrect but irrelevant assertion about supposed public policy. At bottom, all of the State's arguments seek judicial redrafting of the statute, contrary to established law.

The State's (newly raised on appeal) "implicit ratification" theory still requires that the City have taken some affirmative action. It does not turn inaction into action. And the City failing to somehow override SFOT's decision to prohibit firearms (despite the absence of any legal authority to do so) is not taking action, even with the State's newly applied label of "ratification" to its earlier arguments.

The State's assertion that the City entering into a lease (years before the statute was enacted) that was neutral regarding the ability of the lessee to prohibit firearms fares no better. Entering into a lease may be taking an action, but when the lease says nothing about firearms, it is not taking action that states or implies that firearms are not allowed at the Fair.

Finally, the fact that if the City controlled Fair Park during the Fair *the City* could not prohibit firearms does not mean a lessee is bound by the same restriction. The statutory limitation is specific to who is taking

action with respect to specific property, not to the property by itself. The plain language shows as much—"a state agency or political subdivision of the state may not…." It does not say "Firearms may not be prohibited on property owned by a governmental entity," for example. Further, property law is clear that restrictions that apply to an owner of land because of the owner's status are not applicable to a lessee of the that owner's property.

The State's separate argument that the trial court improperly excluded evidence fares no better. That argument concerns exclusion of a 2022 complaint by a peace officer that he was denied entry by SFOT (not the City) to the 2022 Fair with his service weapon. But that complaint has nothing to do with SFOT's 2024 policy at issue in this lawsuit. Besides long predating that policy, the 2022 complaint was not based on section 411.209 at all. Instead, it was based on Code of Criminal Procedure article 2.1305, which is specific to peace officers and (unlike section 411.209) affirmatively grants them a right to carry firearms on certain premises that are open to the public. Additionally, contrary to the State's argument, the City's response to the 2022 complaint does not suggest any level of control of SFOT. Simply put, that evidence is irrelevant to any

17

issue in this case, and the district court did not abuse its discretion in excluding it.

## ARGUMENT

I. **RELEVANT LEGAL STANDARDS REGARDING FIREARMS**

A. **Legal Background on Firearms Laws and Related Trespassing Provisions.**

To fully appreciate the flaws in the State's arguments, it is helpful to briefly review the various laws regulating the intersection of the right to carry firearms and property rights. For the Court's convenience, SFOT has attached a chart of various firearm statutes to its brief as Appendix F.

Texas Government Code Chapter 411, Subchapter H, has long provided a process by which certain Texas residents could apply for and receive a license to carry a handgun (either concealed or open ). Tex. Gov't. Code §§ 411.171, *et seq.*[3] The Penal Code provides another important element of the firearm and property-rights framework. It provides one way

---

[3] The need for a license under Subchapter H was significantly reduced in 2021 with the adoption of the Firearm Carry Act, commonly referred to as the "constitutional carry bill," which eliminated the need for Texas residents to have a license in order to carry a handgun. That law is not

18

by which those controlling real property owners may, consistent with common law and constitutional rights, restrict access to their property by those carrying firearms. *See* Tex. Penal Code §§ 30.05–.07. In summary, those cumbersome statutes provide:

- Section 30.05 of the Penal Code is the state's general criminal trespass law. It makes it an offense to enter property of another where the "owner," which includes a lessee,[4] provided "notice that the entry was forbidden" *or* to remain on property after the owner provides "notice to depart." *Id.* § 30.05(a).

- Section 30.06 of the Penal Code is a special trespassing

---

relevant here given the State's abandonment on appeal of any constitutional claim and that section 411.209 is expressly limited to license holders.

[4] The Penal Code broadly defines "owner" to include: "a person who: (A) has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor;…" Tex. Penal Code § 1.07(a)(35). A "person" is defined in the Penal Code to include an "association" a "corporation," and an "association" in turn is defined to include "a government or governmental subdivision or agency." *Id.* § 1.07(a)(6), (38). Under these definitions, SFOT is an owner.

statute for licensed concealed carriers. It makes it an offense to enter property with a concealed handgun after receiving written or oral notice that entry with a concealed handgun is prohibited by the owner. *Id.* § 30.06(a)–(b). It also provides a specified form of written notice. *Id.* § 30.06(c)(3).

- Section 30.07 of the Penal Code is a special trespassing statute for licensed open carriers. It follows the same approach for them as section 30.06. *See id.* § 30.07(a), (b), (c)(3).

Each provision also contains exceptions and defenses, some of which involve special circumstances pertaining to firearms. For example, under sections 30.06(e) and 30.07(e) on property "owned or leased by a governmental entity," a handgun license-holder will not be deemed to have committed the offense of criminal trespass under sections 30.06 or 30.07 simply by ignoring a 30.06 or 30.07 notice. Instead, on property that is "owned or leased by a governmental entity," it is a criminal offense to possess a handgun pursuant to sections 30.06 or 30.07 only if that property is specifically identified in Texas Penal Code section 46.03.

Penal Code section 46.03 lists several locations where it is a crime for an individual to take a firearm. *See id.* § 46.03 (covering, for example, amusement parks and sporting events). That section does not purport to be an *exclusive* list of places where an individual may not take a firearm, or where firearms may be prohibited; it is an exclusive list of locations where possessing a firearm is a crime. Stated slightly differently, section 46.03 says nothing about what actions an owner of property may take to prohibit firearms, nor does it say anything about the types of properties where firearms may be prohibited.[5]

The same is true of sections 30.05, 30.06, and 30.07. Those three sections describe the type of notice that is sufficient to create a *criminal offense* in circumstances involving entry with a handgun or firearm. They simply define in what circumstances the tort of trespass constitutes a

---

[5] Previously in this litigation, the State devoted a significant amount of time discussing the reach of section 46.03 to conclude that it does not describe the entirety of the property that SFOT leases. That is not a point in dispute: SFOT does not contend that the entirety of the grounds on which the Fair is conducted fall within section 46.03. Parts of it do, but the entire area does not. Regardless, the State appears to have abandoned its previous misguided argument that SFOT could prohibit firearms only in areas covered by section 46.03.

crime and identify in what circumstances such a crime exists when a firearm is involved. They do not prohibit other types of notices. They do not prohibit any actor from posting a notice that might be ineffective for any reason. At most, an invalid or noncompliant notice would affect the defenses available to a criminal prosecution. The poster would not have itself violated any law.

The three sections also prohibit independent crimes, despite the overlap in subject matter. That an individual has not violated one section does not mean they have not violated another section. Thus, for example, an individual who has not violated sections 30.06 or 30.07 by *entering* property with a firearm because of a lack of proper notice under those sections may still violate section 30.05 by *remaining* on property when asked by the owner to leave—*regardless* of the owner's reason for asking the person to leave. *See* Tex. Penal Code § 30.05(a)(2). The statute recognizes that fact by providing for enhanced punishment in the event of such a failure to depart. *Id.* § 30.05(d–3).

Importantly, those sections do not grant individuals an affirmative right to enter private or governmental property with a firearm even if a notice invoking those provisions is for any reason invalid. *Cf.* Tex. Code

Crim. Pro. art. 2.1305 (prohibiting many privately-owned establishments from restricting a peace officer or investigator from carrying a firearm regardless of whether the officer or investigator is on duty). Again, those sections address only when a criminal trespass prosecution can occur. They do not prevent any party that possesses and controls property, either public or private, from prohibiting firearms on that property when in control of that property.

That is where Government Code section 411.209 comes in. It pro-vides:

> [A] ***state agency or a political subdivision of the state may not <u>take any action</u>***, including an action consisting of the provision of notice by a communication described by Section 30.06 or 30.07, Penal Code, ***that states or implies that a license holder*** who is carrying a handgun under the authority of this subchapter ***is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity*** unless license holders are prohibited from carrying a handgun on the premises or other place by Section 46.03, Penal Code, or other law.

Tex. Gov't Code § 411.209(a) (emphasis added).[6]

---

[6] SFOT previously noted as an aside that the only proper grammatical construction of the phrase "leased by" in "owned or leased by" is that "leased by" refers to property owned by another that is leased *by* a political subdivision for its own use, not government-owned property leased

23

By its terms, the statute prohibits the *government*—and only the government—from *taking action* that states or implies that a person carrying a handgun under a license[7] may not enter or remain on property owned or leased by the government except for areas covered by Penal Code section 46.03 where the government, as the government, can exclude firearms. It also carries an implied causation requirement. That is, for government action to be prohibited by section 411.209, the *reason* for the action has to be *because* the person is carrying a handgun. The statute does not prohibit, for example, a governmental entity from removing an individual from property for engaging in criminal conduct, or barring an unauthorized individual from entry, simply because that individual happens to be a license holder carrying a handgun. Equally important, section 411.209 does not impose on a state agency or a political subdivision a duty to allow the carrying of a handgun on governmental property.

---

*to* another entity. SFOT stands by its understanding as the only reasonable reading of the statute. But it does not matter: there is no dispute that the City *owns* the property at issue here, so the meaning of "leased by" is immaterial.

[7] Again, the statute is limited to licensed carry; it does not apply to prohibitions on those who would exercise "constitutional carry."

In fact, Subchapter H of the Government Code, which includes section 411.209, recognizes the right to exclude. Section 411.203 provides that nothing within Subchapter H limits the right of any employer—public or private—to prohibit license holders from carrying a handgun on the premises of the business. Tex. Gov't Code § 411.203. Because all or nearly all governmental entities are employers, there is an apparent tension between section 411.203, which appears to allow any employer (including a public employer) to exclude license holders (employees or nonemployees) from its premises, and section 411.209, which prohibits a governmental entity from stating or implying that a license holder may not enter a place owned or leased by the entity.

Section 411.209 may simply represent a significant exception to 411.203, such that the former effectively removes the right provided by the latter to the City to deny persons entry to locations where the City conducts business. That view would reinforce that section 411.209 was intended to regulate governmental entities only, not private parties, such as SFOT, which are still covered by section 411.203 (assuming the private party is an employer, as SFOT is, SCR:93:11-15, 118:15-119:5).

At bottom, however, reconciling the tension between section 411.203 and section 411.209 is unnecessary. That is because—separate from the special Penal Code provisions relating to firearms—SFOT's right to exclude license holders (and anyone else) from its controlled property derives from longstanding property law rights, with or without statutory reinforcement of those rights—as the OAG at one time agreed. *See infra* Subpart I.B, Subpart IV.A.

**B.    The OAG Previously—and Correctly—Agreed that Section 411.209 Does Not Apply to Decisions Like that of SFOT Because Property Law Allows Private Parties (such as SFOT) to Exclude Those with Firearms from Property They Control.**

In 2016, the Erath County Attorney submitted a request for an opinion from the OAG regarding the ability of a non-profit agency operating on land it leases from the government to prohibit handguns pursuant to sections 30.06 and 30.07. *See* Tex. Att'y Gen. Op. Req. RQ-0097-KP (2016). The non-profit agency was the only tenant on the city-owned land. The request further specified that "[t]he City has no authority as to the operation of the non-profit and all decisions are made by an independ-

ent board of directors." *Id.* at 1. In other words, the non-profit had exclusive control over the city-owned property and made policy decisions autonomously, without government oversight.

In response, the OAG issued Op. KP-0108. *See* CR1:153-56 (App. E). That opinion correctly notes "the prohibition in subsection 411.209(a) applies only to 'a state agency or political subdivision of the state.'" CR1:154 (App. E) (quoting Tex. Gov't Code § 411.209(a)). Op. KP-0108 suggests that in situations where "a private entity is operating jointly with a governmental entity or has been hired by the governmental entity to perform certain governmental functions, fact questions could arise about which entity effectively posted a notice prohibiting the carrying of guns." But outside of that scenario, "[a]s long as the state agency or political subdivision leasing the property to the nonprofit entity has no control over the decision to post such notice, the state agency or political subdivision lessor would not be the entity responsible for the posting and would therefore not be subject to civil penalty under section 411.209." CR1:154 (App. E).

Later, the OAG reinforced its opinion in *dismissing* citizen complaints arising from property of the kind covered in the opinion. *See* CR1:

157-58; SCR:458–60, 461–63. For example, concerning the Fort Worth Zoo, the OAG determined that the section 30.06 signs at issue were permissible because they were "posted by the [Fort Worth Zoological Association], which possesses the exclusive right to post signage on the zoo premises under the terms of its fee-for-services management contract with [Fort Worth]." CR1:158.[8]

Because here, as discussed further below, there is no record evidence that the City and SFOT operate the Fair jointly and the evidence was undisputed that the decision at issue was SFOT's alone, the situation in this case fits squarely within Op. KP-0108. The City did not violate section 411.209.

After the OAG notified the City of its belief of a section 411.209 violation with respect to SFOT's prohibition on firearms, however, two legislators requested an opinion from the OAG on the issue. *See* Tex. Att'y Gen. Op. Req. RQ-0558-KP (2024). Then—the day before the State had

---

[8] *See* Matthew R. Entsminger, *Wrongful Exclusion of Concealed Handgun License Holder Complaint – No Violation,* Tex. Att'y Gen. (Nov. 10, 2016), https://www2.texasattorneygeneral.gov/files/opn/3006_letters/2016-11-10 -Fort_Worth_Zoo.pdf.

originally scheduled its hearing on the temporary injunction—the OAG "withdrew" Op. KP-0108, purportedly "pending issuance" of an opinion in response to that request.[9] This, despite longstanding policy of the OAG *not* to issue opinions involving disputed facts or during litigation[10] and despite the lack of any precedent in the OAG for withdrawing an opinion simply because someone has requested another opinion.

The conclusion reached in Op. KP-0108 was an express recognition of longstanding Texas property laws: "As a general rule, a lessor relinquishes possession or occupancy of the premises to the lessee." CR1:154 (App. E) (quoting *Levesque v. Wilkens*, 57 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2001, no pet.)). *Levesque* reinforces that Op. KP-0108 is a correct interpretation of the law:

> The law is well settled that when land is leased, the lessee becomes the possessor and occupier of the land, and the les-

---

[9] *See KP-0108*, TEX. ATT'Y GEN., https://www.texasattorneygeneral.gov/opinions/ken-paxton/kp-0108.

[10] Tex. Att'y Gen. Op. No. KP-0240 (2019) at 1 ("The attorney general opinion process does not resolve disputed fact questions or settle private disputes."); Tex. Att'y Gen. Op. KP-0118 (2016) at 2 (explaining that "[d]eclining to answer a question that is the subject of pending litigation is a long-standing policy of this agency" and citing attorney general opinions dating back to 1947).

29

> sor's liability for…conditions on the premises generally termi-
> nates. A lease grants a tenant exclusive possession of the
> premises as against the owner….When the lessor has no con-
> trol over the premises, the lessor has no liability for injuries
> stemming from leased premises within the control of a tenant.

*Levesque*, 57 S.W.3d at 504–05 (internal citations omitted); *see also Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996) ("[A] lessor relinquishes possession or occupancy of the premises to the lessee."); *Kukis v. Newman*, 123 S.W.3d 636, 639 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (same); *Craig v. Mixon*, No. 07-97-0350-CV, 1998 WL 466133, at *4 (Tex. App.—Amarillo Aug. 11, 1998, pet. denied) (same).

Finally, Op. KP-0108 correctly determined that the question of whether sections 30.06 and 30.07 "make it an offense for a person carrying a handgun to enter property leased by a nonprofit entity from a state agency or political subdivision" was a separate issue. On that issue, despite apparent contrary legislative history, the OAG determined that the words of the statute must be followed and those words state that government ownership of the property is an exception to trespassing under those sections. That conclusion followed from the well-settled principle that "[e]nforcing the law as written is a court's safest refuge in matters

30

of statutory construction, and we should always refrain from rewriting text that lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009).

In sum, Op. KP-0108 squarely answered the question whether under the circumstances here SFOT has the right to bar firearms from its private event. *In re State*, 698 S.W.3d at 905 (J. Blacklock, joined by C.J. Hecht and J. Young, concurring) ("The Opinion concluded that a private party in such a position likely could prohibit guns in this way under Texas law").

Yet the OAG filed this action on behalf of the State in direct conflict with the OAG's previous position as expressed in Op. KP-0108. As all are aware by now, the OAG then (under what SFOT contends are suspicious circumstances) withdrew the opinion. Regardless of the reason for the withdrawal, the act of withdrawing does not eliminate the underlying legal principles on which Op. KP-0108 relied. As now-Chief Justice Blacklock noted in his earlier concurrence, withdrawing an opinion is not the same as repudiating its analysis or explaining why it was wrong. *In re State*, 698 S.W.3d at 904 (J. Blacklock, joined by C.J. Hecht and J. Young, concurring).

31

The State now appears to try to respond to Chief Justice Blacklock's challenge by arguing that Op. KP-0108 is now inapposite because it addressed a prior version of the statute. State Br. 45. The problem is that the statutory amendment did not in any way impact the legal principles that Op. KP-0108 relied on, which still apply today.

Specifically, the version of the section 411.209(a) that was in effect at the time that Op. KP-0108 was issued (the 2015 version) provided:

> A state agency or a political subdivision of the state may not provide notice by a communication described by Section 30.06, Penal Code, or by any sign expressly referring to that law or to a concealed handgun license, that a license holder carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity unless license holders are prohibited from carrying a handgun on the premises or other place by Section 46.03 or 46.035, Penal Code.

The State appears to identify two changes in the 2019 amendment as justifying the withdrawal of the opinion: (1) forbidding any action that states or implies exclusion and (2) subjecting violators to daily civil penalties, mandamus, and other equitable relief. State Br. 43. But the State makes no attempt to explain *why* these changes matter in the context of Op. KP-0108's reasoning. They don't.

Op. KP-0108 reached its conclusion by looking to (1) property law and (2) whether the state agency or political subdivision has control over the decisions of the lessee. SCR:455. As explained above, these core principles mandate the same result in Op. KP-0108, regardless of the changes the State identifies. Thus, the opinion's analysis remains correct, despite its withdrawal: SFOT's rights under property law authorize it to prohibit firearms at its private event.

## II. THE STATE NO LONGER ADVANCES THREE OF ITS FOUR "CAUSES OF ACTION," LEAVING ONLY THE SECTION 411.209 CLAIM.

At the district court level and on appeal of the temporary injunction issue, the State advanced what the State labeled as four separate "causes of action": (1) a claim that Appellees violated section 411.209, (2) a request for a declaratory judgment that SFOT may not post section 30.06 or 30.07 signs, (3) a request for declaratory judgment that SFOT may not post section 30.05 signs, and (4) a claim for violation of the Texas Constitution.[11]

---

[11] SFOT pointed out that those were not all "causes of action," specifically the requests for declaratory relief.

On appeal, the State challenges only the dismissal of its claim that SFOT's policy prohibiting firearms violates section 411.209. It abandoned the request for relief regarding posting and, importantly, abandoned any constitutional claim. *See* State Br. at xiv (identifying the issue presented as "was the State entitled to summary judgment against the City and the [SFOT] under Section 411.209").

Nevertheless, the State still cites to authority addressing the state-action doctrine. *See* State Br. 30 (citing, e.g., *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86 (Tex. 1997)). But the state-action doctrine is a principle of *constitutional* law, under which "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). This Court should reject the State's attempt to conflate principles surrounding a constitutional claim that it has abandoned with its claim under section 411.209. Regardless, the Fifth Circuit has already held that there is no state action in the operation of the Fair. *See Rundus v. City of Dallas and State Fair of Texas*, 634 F.3d 309, 315 (5th Cir.), *cert. denied*, 565 U.S. 821 (2011). Tellingly,

citing cases applying the state-action doctrine, the State offers no response to *Rundus*.[12]

### III. THE COURT SHOULD DISMISS THE INDIVIDUAL APPELLANTS' APPEAL, AS THEY HAVE NO CLAIM UNDER SECTION 411.209.

The Individual Appellants did not file a separate appellate brief and notified this Court that they intend to rely on the State's brief. But the Individual Appellants do not have standing to bring a claim for violation of section 411.209. *See* Tex. Gov't Code § 411.209(g) ("If *the attorney general* determines that legal action is warranted and that the state agency or political subdivision has not cured the violation within the 15-day period provided by Subsection (f)(3), *the attorney general or the appropriate county or district attorney* may sue to collect the civil penalty provided by Subsection (b)." (emphasis added)). Accordingly, the Court should dismiss the appeal filed by the Individual Appellants.

---

[12] The State—as it has with every brief it has filed in this case—has also modified its arguments on the section 411.209 issue. For example, it no longer argues that any role the City's police officers would have in removing an individual that SFOT decided was no longer welcome at the Fair would violate that provision. Presumably, the State does so because of Justice Blacklock pointing out the flaws with that position. *See In re State*, 698 S.W.3d at 904 n.1 (J. Blacklock, joined by C.J. Hecht and J. Young, concurring).

## IV. THE COURT SHOULD AFFIRM THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES

### A. There Was No Violation of Section 411.209.

#### 1. The City did not "take any action" prohibited by section 411.209.

The proper method of interpreting a statute is settled:

> The meaning of a statute is a legal question, which we review *de novo* to ascertain and give effect to the Legislature's intent. Where text is clear, text is determinative of that intent. This general rule applies unless enforcing the plain language of the statute as written would produce absurd results. Therefore, our practice when construing a statute is to recognize that "the words [the Legislature] chooses should be the surest guide to legislative intent." Only when those words are ambiguous do we "resort to rules of construction or extrinsic aids."

*Entergy Gulf States, Inc.*, 282 S.W.3d at 437. Indeed, the Texas Supreme Court recently reaffirmed these principles just weeks ago, noting that courts "'presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *Third Coast Servs., LLC v. Castaneda*, No. 23-0848, --- S.W.3d ----, 2025 WL 3558839, at *3 (Tex. Dec. 12, 2025) (quoting *Rogers v. Bagley*, 623 S.W.3d 343, 352 (Tex. 2021)).

Applying the undisputed facts to the statutory text resolves the State's claim of a violation of section 411.209. To begin, the statute only

36

prohibits conduct by the *government*—a governmental entity may not take action that states or implies that a licensed handgun carrier is prohibited from entering government property with the handgun. SFOT is a private entity; it therefore plainly is not covered by section 411.209. The State does not appear to dispute that proposition but argues that SFOT is responsible for the City's alleged section 411.209 violation. That argument fails, however, because the City has not violated section 411.209: the City did not take any action that states or implies that firearms are prohibited on the Fair grounds.

"Action" means "doing something for a particular purpose."[13] It is "the process of doing something, especially when dealing with a problem or difficulty."[14] Similarly, the collocation "take action" means, as one would guess, *to do something*.[15] Doing nothing is the opposite of doing something. The Legislature knows how to and does distinguish between

---

[13] *Action*, COLLINS DICTIONARY, https://www.collinsdictionary.com/dictionary/english/action.

[14] *Action*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/action.

[15] *Take Action*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english /take-action.

37

acting and failing to act when it means to.[16] *See Paxton v. Garza*, No. 15-25-00116-CV, --- S.W.3d ----, 2025 WL 3764955, at *4 (Tex. App. [15th Dist.] Dec. 30, 2025) ("Because the Legislature has expressly granted rulemaking authority to the Attorney General in numerous other statutes and clearly knows how to expressly grant rulemaking authority when it intends to do so, we cannot conclude Section 41.006 grants express rulemaking authority here.").

Here, the City did nothing regarding SFOT's decision to prohibit firearms at the Fair. It is undisputed that only SFOT adopted the prohibition on firearms. SCR:113:24-114:10, 132:16-20. The City did not do so. *Id*. It did nothing to adopt the prohibition, and did nothing to state or imply that firearms were prohibited. Section 411.209 does not require

---

[16] *E.g.*, Tex. Util. Code § 162.058 (addressing perfecting defectively organized organizations where the organization "files defective articles of incorporation or ***fails to take an action*** necessary to perfect its corporate" (emphasis added)); Tex. Tax Code § 142.009 ("A person may not challenge … an action ***or inaction*** by any department, agency, or other instrumentality of this state, or any political subdivision of this state, on the ground that the action or inaction is inconsistent with the agreement." (emphasis added)); Tex. Gov't Code § 808.003 ("In a cause of action based on an action, ***inaction***, decision, divestment, investment, company communication, report, or other determination made or taken in connection with this chapter … ." (emphasis added)).

the City to ensure firearms are allowed on property: it prohibits only the specified action by the City.

### 2. The State's "take action" theories lack merit.

On appeal, the State advances three separate theories for how the City took action. All are incorrect.

*First*, the State maintains that the City has taken action through what it for the first time refers to as "implicit ratification" of SFOT's policy. State Br. 27–30. Put another way, the State argues that "the City has never attempted to clarify with SFOT that the Fair Park Contract does not allow it to institute its ban at issue." *Id.* 28. And elsewhere, the State suggests that the City should have terminated its contract with SFOT to prevent SFOT from continuing its policy. *Id.* at 38.

As an initial matter, the lease does not prohibit SFOT from prohibiting firearms. Section 411.209 applies only to the City. There is no State law that prevents SFOT from prohibiting licensed holder from entering its business—the Fair. In fact, section 411.203 explicitly allows SFOT to do so. Additionally, the City had no legal basis to terminate the lease because SFOT did so, and the State does not identify any, given

39

that SFOT was not in violation of the lease or State law by prohibiting firearms.

As to the State's newly labeled "implicit ratification" argument, that theory fails for multiple reasons. As an initial matter, the State does not explain why the legal doctrine of ratification even applies here, much less how it would translate to a violation of section 411.209. "Generally, ratification is a doctrine of agency law, and allows a principal to be bound by an agent's unauthorized contract in circumstances where the principal becomes aware of the contract and retains benefits under it." *Willis v. Donnelly*, 199 S.W.3d 262, 273 (Tex. 2006); *Ratification*, *Black's Law Dictionary* (12th ed. 2024) ("Confirmation and acceptance of a previous act, thereby making the act valid from the moment it was done … ."). But this agency-law principal has no connection to section 411.209, which asks only whether the City has taken an action stating or implying that firearms are not permitted during the Fair. That is all the more the case because SFOT is not the agent of the City.

Additionally, SFOT's firearm policy is not "unauthorized," a core requirement for ratification. As explained below, SFOT's firearm policy did not violate the lease, and so it was not unauthorized. *See infra*.

40

Moreover, ratification, implicit or otherwise, generally requires some affirmative act, just as does section 411.209. Indeed, in the case the State relies on as supporting its implicit-ratification theory there was a necessary affirmative act supposedly justifying ratification: the cashing of checks. *See BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 200 (Tex. 2021); *Smith v. Estill*, 28 S.W. 801, 805 (1894) ("To constitute a ratification, it must appear that ***the acts*** relied upon were done with a full knowledge of all the facts, and with intent to adopt the unauthorized act in question." (emphasis added)). The State identifies no similar affirmative act by the City that could be viewed as ratification. The City did nothing. The State agrees. Its complaint—that the City sat idle, did not try to intervene, and failed to terminate the lease—represent *inaction*.[17]

---

[17] Although there may be rare cases where ratification was found based on "[p]rolonged silence or inaction," ratification in such circumstances can occur only "when the circumstances create some obligation to speak up or act." *BPX*, 629 S.W.3d at 208. But here, the City had no obligation to speak up or act. Section 411.209 simply required that it not take any action that states or implies that firearms are banned at the Fair. The statute does not contain any obligation to disclaim or otherwise disagree with SFOT's policy.

41

Perhaps most crucially, even if inaction could constitute "ratification" in certain circumstances (not present here), that ratification would be insufficient to constitute a violation of section 411.209. Again, for section 411.209 to be violated there must be an action. The State cannot slap the "ratification" label on inaction and magically turn inaction into action. In this regard, the State's appeal to the importance of the plain meaning of the statute, *e.g.*, State Br. 23, proves to be nothing short of lip service. The State cannot rewrite section 411.209 to prohibit inaction to achieve its desired policy. That is the province of the legislature.

*Second*, the State asserts that the City took action "through its unlawful grant of authority to prohibit license holders carrying guns through the Fair Park Contract." This theory fails as well. Entering the contract, although an "action," does not state or imply that firearms are prohibited on the premises. In fact, the State itself explicitly acknowledges this very point: "The Fair Park Contract ***is silent*** regarding license holders carrying handguns on the premises of Fair Park, but it does contain a provision stating that it shall be construed according to the laws of Texas." State Br. 28 (emphasis added). But as

already established the laws of Texas actually allow private landholders and employers, such as SFOT, to prohibit even licensed holders from its business—the Fair. The OAG concluded the same in its previous opinion: "As long as the state agency or political subdivision leasing the property to a nonprofit entity has no control over the decision to post such notice, the state agency or political subdivision lessor would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209." CR1:154 (App. E). And section 411.209 does not prohibit action by the City that merely "makes possible" a private prohibition on handguns.

This second theory also overlooks that at the time the lease was first entered, in 2003, section 411.209 did not exist.[18] And once the lease was entered the City could not legally force SFOT to accept an amendment. Basically, the State is arguing that the City's failure to take an act it could not take is ratification. That assertion collapses on itself.

---

[18] Section 411.209(a) does not purport to be and is not retroactive. *See Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 203 (Tex. App.—Austin 2008, no pet.) ("Unlike the United States Constitution, the Texas Constitution has a specific prohibition against retroactive laws.").

*Third*, the State's argument that SFOT cannot exclude firearms because its rights as a lessee are limited by statutory constraints on the City (the lessor) is incorrect.[19] In Texas a leasehold estate, in the absence of contrary language in the lease, divests the fee owner of all possession and control of the property governed by the lease and grants it to the tenant.[20] *Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996) ("[A] lessor relinquishes possession or occupancy of the premises to the lessee."); *Kukis v. Newman*, 123 S.W.3d 636, 639 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (same); *Levesque v. Wilkens*, 57 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Craig v. Mixon*, No. 07-97-0350-CV, 1998 WL 466133, at *4 (Tex. App.—Amarillo Aug. 11, 1998, pet. denied) (same). As a result, the fee owner has

---

[19] SFOT does not disagree that the Legislature *can* regulate lease terms, if consistent with the state's police power, and control how public lands are to be leased. *See* State Br. 35–37. But section 411.209 by its terms does neither. It addresses only who a state agency or political subdivision can exclude from public property when the state agency or political subdivision has possession and control of the public property.

[20] To have a possessory interest is defined as "[t]he present right to control property, including to exclude others, by a person who is not necessarily the owner." *Possessory Interest*, *Black's Law Dictionary* (12th ed. 2024).

transferred and no longer possesses one of the most essential and treasured rights associated with real property — the ability to exclude others. *Severance v. Patterson,* 370 S.W.3d 705, 709 (Tex. 2012). The right to occupy to the exclusion of others is a key characteristic of a leasehold. 52 C.J.S. *Landlord & Tenant* § 328 (2024). For all practical purposes a lease is equivalent to absolute ownership, the primary right missing being the ability to sell the leased property. *Id.*

And, as multiple courts have recognized, the right to exclude others from property includes the right to exclude those with firearms. *See, e.g.*, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1264 (11th Cir. 2012) ("[A property owner's] right, rooted in the common law, to forbid possession of firearms on its property is entirely consistent with the Second Amendment."); *Fla. Retail Fed., Inc. v. Att. Gen. of Fla.*, 576 F. Supp.2d 1281, 1295 (N.D. Fla. July 28, 2008) ("But a private business's banning of guns on its own property plainly is not unconstitutional; there is no constitutional right to bear arms on private property against the owner's wishes."). A lessee's right to exclude is not limited by any constraints the owner may have based on its status. As much as the State would like it to say so, Section 411.209 does not say that licensed holders

45

cannot be prohibited from entering or remaining on property owned or leased by the governmental entity. Nor does it grant an affirmative right to enter as the peace-officer statute does. Instead, it says the governmental entity, here the City, cannot take action to prohibit their entering or remaining. It imposes what amounts to a personal restriction on a particular type of owner based on their status—here being a governmental entity.[21]

Under the State's argument a host of property-related restrictions on individual conduct would somehow transform into restrictions on subsequent owners or lessees of property. For example, if a private landowner is prohibited from lawful possession of a firearm because of a felony conviction then a lessee of that property is likewise prohibited from

[21] The Legislature seems to agree that section 411.209's reach was based on the status of the owner and did apply to governmental property that was leased to a private party. In the 2025 session, a bill introduced to address SFOT prohibiting firearms would have done so by adding a new status section applicable to contractors that leased governmental property. *See* S.B. 1065, 89th Leg. (Tex. 2025). In other words, the bill's author read section 411.209 exactly as does SFOT and the City of Dallas. Section 411.209 applies only when the City as the City takes action as a governmental entity. That bill made it out of the Senate but died in the House. *See* https://legiscan.com/TX/bill/SB1065/2025.

possessing a firearm. Or, if a homeowner subject to a protective order requiring him or her to stay away from a nearby neighbor moves and leases the property, the tenant would be subject to the order. Title II of the federal Civil Rights Act of 1964 prohibits owners of businesses that operate public accommodations from discriminating on various grounds. Those prohibitions are tied to the nature of the property—is it being operated as a public accommodation? To accept the State's view asserted here, that even though the prohibition concerns whether the land is being used for a particular type of activity (operating a public accommodation), it would automatically transfer to a tenant or subsequent owner who does not operate the property as a public accommodation. Good policy or not, that simply is not the law. The restriction under that statute, just like section 411.209, is purely personal to the operator of a public accommodation. It does not attach to the land.[22]

---

[22] Making the point even more starkly, the State's view would mean that a city could never sell property without it being encumbered by the section 411.209 prohibition. So if the City had surplus real property and sold it in compliance with applicable law, under the State's view the section 411.209 restriction would necessarily transfer to the new owner. That example shows why the State's contention is nonsense. It would conflict with the statutory language.

For that reason, the State's "bundle of sticks" discussion fares no better. The State contends that the right to exclude is one of the sticks in the "bundle of sticks" that define an estate in land and that if a fee owner does not have that right neither does a tenant. But that conclusion is true only if the land, as opposed to the owner, is so restricted. Section 411.209 only restricts state agencies and political subdivision from excluding licensed handgun owners from public property; it does not say licensed handgun owners cannot be excluded regardless of who possesses the right to exclude. As already explained, it is hornbook law that once property is leased the lessor no longer controls who can be admitted or excluded. That right exists exclusively in the tenant

The State suggests that *Lightning Oil* is to the contrary by selectively quoting from the opinion without reference to the facts. According to the State, *Lightning Oil* stands for the proposition that a leasehold estate has the same restrictions as the fee estate. Not so. In *Lightning Oil* a fee owner had severed the mineral estate, and the owner of the mineral estate had in turn entered into an oil and gas lease with Lightning. The owner of an adjacent property had entered into an oil and gas lease with Anadarko but Anadarko could not use the surface.

Anadarko entered into an agreement with the owner of the surface of the mineral estate in which Lightning had a lease to directionally drill to the area covered by Anadarko's oil and gas lease. Lightning claimed Anadarko could not drill through the mineral estate that Lightning was leasing. The issue in *Lightning Oil* had nothing to do with whether an oil and gas lessee's rights were limited by a fee owner's rights. Rather, the question was what rights does an oil and gas lease convey. That question has nothing to do with what rights are conveyed by the lease of real property. The Supreme Court concluded that the rights conveyed in an oil and gas lease from a mineral interest owner included only the right to develop, and did not include the right to possess the specific place or places where the minerals were located. As a result, Anadarko was free to drill through the mineral estate. As noted above, in the lease of real property, as opposed to an oil and gas lease, the tenant does have exclusive possession and control of the leased land. In short, *Lighting Oil* has no application to this matter.

———————————————

At the end of the day, the State still cannot answer the question posed by now-Chief Justice Blacklock: why does Texas law obligate

SFOT, a private entity that acts independently of the City, to allow handguns at the Fair. *See In re State*, 698 S.W.3d at 904 (J. Blacklock, joined by C.J. Hecht and J. Young, concurring). It cannot answer the question because the answer is that state law does not prohibit SFOT from banning firearms during its private event, any more than it bans an individual who owns or leases property from imposing the same restriction on his or her guests. The trial court therefore properly granted SFOT's motion for summary judgment and denied the State's motion.

### B. The Trial Court Correctly Excluded Evidence of SFOT Mistakenly Preventing a Peace Officer from Entering a Previous Fair.

Although the State cites to various exhibits in its brief,[23] it appears as though the only exhibit about which it complains on appeal is the

---

[23] In support of the State's argument that it had attached to its summary judgment motion "evidence concerning the State's previous litigation involving SFOT's systematic exclusion of armed off-duty peace officers from the premises of Fair Park in violation of Texas Law," the State cites to CR1:454-60, 466-68, and 480. State Br. 39-40. But the exhibits at those record cites do not relate to the exclusion of the armed off-duty peace officer. Instead, CR1:466-68 (Ex. 1-G to the State's motion) is Mr. Garner's complaint about the State Fair policy at issue in this litigation, and was largely admitted as part of Plaintiff's Exhibit 17 in the joint appendix. SCR:203-04. CR1:454-60 (Ex. 1-E to the State's motion) is a March 2024 complaint from Mr. Garner about the signs posted at the Music Hall, which is not leased to SFOT and is not at issue in this litigation or on

City's response to a letter the OAG had sent to the City on February 21, 2023, which was attached to the State's motion for summary judgment as Exhibit 1-B and addressed the SFOT's mistake in keeping a peace officer out of the Fair with his handgun. *See* CR1:440; State Br. 40.[24] Under the rules, evidence is relevant where "it has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Tex. R. Evid. 401.

This Court reviews the decision to exclude summary judgment evidence for an abuse of discretion. *Houle v. Capital One Bank (USA), N.A.*, 570 S.W.3d 364, 369 (Tex. App.—El Paso 2018, pet. denied). As this Court recently explained, "[a] court abuses its discretion if it acts without ref-

---

appeal. And CR1:480 (Ex. 2 to the State's motion) is a declaration from Mr. Garner, which addresses the State Fair policy at issue in this litigation and the Music Hall, which (again) is not at issue. None of these exhibits concern the exclusion of a police officer from Fair Park.

It appears as though the State may have intended to cite to Exhibits 1-A, 1-B, and I-C from its motion for summary judgment, which can be found at CR1:437-38, CR1:440, and CR1:442-43.

[24] To the extent the State is challenging the exclusion of Exhibit 1-A and Exhibit I-C, the exclusion of those letters was not error for the same reasons the exclusion of Exhibit 1-B was not error.

erence to any guiding rules and principles or acts arbitrarily and unreasonable." *Tex. Dep't of Pub. Safety v. Saintes*, No. 15-24-00092-CV, 2025 WL 1710798, at *3 (Tex. App. [15th Dist.] June 19, 2025).

The trial court did not abuse its discretion in excluding the City's February 21, 2023 letter because that letter is not relevant for three separate reasons.

*First*, as the State itself has acknowledged in its February 8, 2023, letter to the City, the incident involving the peace officer did not involve Section 411.029. CR1:437 (noting that "Texas peace officers are licensed by TCOLE standards and not under Tex. Gov't Code Chapter 411"). Instead, the February 8, 2023 letter invoked then-effective Texas Code of Criminal Procedure article 2.1305, which the OAG stated prohibits certain establishments serving the public from restricting peace officers from carrying a weapon. CR1:438. The correspondence in 2023 about a claim that a peace officer was improperly excluded from the 2022 Fair under the Texas Criminal Code is irrelevant to whether the City took any action that states or implies that firearms are not allowed at the Fair under section 411.209 of the Texas Government Code. Accordingly, there was no abuse of discretion in the exclusion of the letter.

*Second*, the State is incorrect that the February 21, 2023 letter shows that the City has control over SFOT. State Br. 41–42. Even a cursory review of the letter in question shows its complete lack of relevance to the issue of "control."

RE: Wrongful restriction of off-duty peace officer at State Fair of Texas, 925 S. Haskell Avenue, Dallas, Texas 75233

Dear Mr. Garcia,

The city has received your letter regarding the above-referenced matter. In response, and as requested, the city hereby commits and is committed to cooperating with all state of Texas laws concerning a peace officer's authority to carry a weapon onto the Fair Park premises during the State Fair of Texas. The State Fair of Texas is a nonprofit organization that operates the annual State Fair of Texas at Fair Park in Dallas. Because the State Fair of Texas operates the annual State Fair, please also find a response letter from the State Fair of Texas, making the same commitment to cooperating with all state of Texas laws concerning a peace officer's authority to carry a weapon onto the Fair Park premises during the State Fair of Texas.

If you have any questions regarding or need further assistance with this matter, please contact the City of Dallas Attorney's Office at 214-670-3519.

CR1:440.

Contrary to the State's argument, this letter does not support the argument that the City can influence or restrain SFOT. *See* State Br. 42. The text of the letter is clear: the City received the OAG's letter and the City was passing along a response letter from SFOT, which is "a nonprofit organization that operates the annual State Fair of Texas at Fair Park." *Id.* Nothing in the letter suggests that the City influenced or controlled SFOT's response to the OAG's February 8, 2023 letter. Indeed, SFOT's

53

response to the OAG appeared on SFOT's letterhead. CR1:442-443. And SFOT's letter makes no reference at all to any influence or control by the City. *Id.* The only City action referenced in SFOT's letter is that the City had forwarded a copy of the OAG's letter to SFOT. CR1:442. This is entirely consistent with the Fifth Circuit's previous conclusion that there is no state action in the operation of the Fair. *See Rundus v. City of Dallas and State Fair of Texas*, 634 F.3d 309, 315 (5th Cir.), *cert. denied*, 565 U.S. 821 (2011).[25]

*Third*, the State's argument that the February 21, 2023, letter shows "deliberate allowance" (whatever that means) "of SFOT's exclusionary policy" is unmoored from the language of section 411.209, which prohibits the City from taking action. As explained above, the State's con-

---

[25] Even if the letter did suggest control (and it does not), that is not evidence that the City exercised any control in regards to the firearms policy *at issue in this litigation. Cf. Pacesetter Corp. v. Barrickman*, 885 S.W.2d 256, 263 (Tex. App.—Tyler 1994, no writ) ("Although habit may be inferred from proof of specific instances of conduct, proof of only two other incidents does not meet the test of frequency and regularity to be habit evidence."). Accordingly, the letter still would not be evidence supporting the State's argument that the City somehow controlled SFOT or SFOT's decision to ban firearms.

tention that the City took action in violation of section 411.209 by allowing SFOT to ban firearms from the Fair is legally unsound and finds no support in the text of the statute. For these reasons, the trial court did not abuse its discretion in excluding the City's February 2023 letter.

Moreover, the State has not even tried to explain how the exclusion of that one letter—even if it had some marginal relevance—could possibly have constituted harmful error. Tex. R. App. P. 44.1. It plainly could not, especially given that it addressed a complaint years before the issues here arose and one arising under a different statutory scheme that does not apply to this case.

## CONCLUSION AND PRAYER

The Court should affirm the judgment of the trial court.

Dated: January 9, 2026.

Respectfully submitted,


By: */s/ Bryan P. Neal*
James B. Harris
 State Bar No. 09065400
Bryan P. Neal
 State Bar No. 00788106
Dina W. McKenney
 State Bar No. 24092809
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (Fax)
jim.harris@hklaw.com
bryan.neal@hklaw.com
dina.mckenney@hklaw.com

Robert B. Smith
 State Bar No. 00786248
3838 Oak Lawn Avenue, Suite 1000
Dallas, Texas 75219
(214) 522-5571
(214) 522-5009 (Fax)
robert@smith-firm.com

ATTORNEYS FOR
APPELLEE STATE FAIR OF TEXAS

## CERTIFICATE OF COMPLIANCE

I certify that according to the computer program used to prepare this document, the document contains 10,821 words, excluding those items that are not to be included in the word count pursuant to Rule 9.4(i).

/s/ *Bryan P. Neal*
Bryan P. Neal


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed and served electronically through eFile.TXCourts.gov this 9th day of January 2026, on all counsel of record.

/s/ *Bryan P. Neal*
Bryan P. Neal

Tab
A

| | | |
|---|---|---|
| STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, and ALAN CRIDER | § § § § § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § § | |
| v. | § § § | 298TH JUDICIAL DISTRICT |
| CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, in her official capacity as the City Manager for the City of Dallas, and the STATE FAIR OF TEXAS, | § § § § § § § | |
| *Defendants.* | § § | DALLAS COUNTY, TEXAS |

## [~~PROPOSED~~] ORDER

On this day came to be heard Plaintiffs' Motion for Summary Judgment (the "Motion"). Having considered the Motion, the evidence and all other matters properly before it, the Court hereby DENIES the Motion.

IT IS ORDERED that summary judgment for Plaintiffs is hereby DENIED as to Plaintiffs' claims against Defendant City of Dallas and Defendant Kimberly Bizor Tolbert, in her official capacity as the City Manager for the City of Dallas (collectively, the "City Defendants"); Plaintiffs' claims against the City Defendants are hereby DISMISSED with prejudice.

SIGNED this ___24___ day of ___June___, 2025.

_____
Judge Presiding

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Tab

B

CAUSE NO. DC-24-14434

| | | |
|---|---|---|
| STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, and ALAN CRIDER | § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § § § | |
| v. | § § | 298TH JUDICIAL DISTRICT |
| CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, in her official capacity as the Interim City Manager for the City of Dallas, and the STATE FAIR OF TEXAS, | § § § § § § § | |
| *Defendants.* | § | DALLAS COUNTY, TEXAS |

## ORDER

Before the Court are Plaintiffs' Motion for Summary Judgment; Defendant State Fair of Texas's ("State Fair") Traditional and No-Evidence Motion for Summary Judgment, in which State Fair also makes evidentiary objections and joins in Defendants City of Dallas and Kimberly Bizor Tolbert's (collectively, the "City Defendants") Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence.

Having considered the above, the pleadings, the arguments, and all other materials properly before it, the Court rules as follows:

1. Plaintiffs' Motion for Summary Judgment is **DENIED**.

2. State Fair's evidentiary objections are **SUSTAINED**.

3. The Court has separately ruled on the City Defendants' Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence in which State Fair joined. That ruling applies equally to State Fair.

**ORDER – Page 1**

4.     Defendant State Fair's Traditional and No-Evidence Motion for Summary Judgment is **GRANTED**. All claims and requests for relief of any kind made by Plaintiffs against State Fair are **DISMISSED WITH PREJUDICE**.

All relief not expressly granted herein is denied. By this order and previous rulings of the Court, all claims and requests for relief of all parties have been resolved. Therefore, this is a final judgment.

SIGNED this ____ day of _____, 2025.

_____
Judge Presiding

ORDER – Page 2

Tab
C

| | | |
|---|---|---|
| STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, and ALAN CRIDER | § § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § § | |
| v. | § § § | 298TH JUDICIAL DISTRICT |
| CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, in her official capacity as the City Manager for the City of Dallas, and the STATE FAIR OF TEXAS, | § § § § § § § | |
| *Defendants.* | § § | DALLAS COUNTY, TEXAS |

## [~~PROPOSED~~] ORDER

On this day came to be heard Defendants City of Dallas and Kimberly Bizor Tolbert's (the "City Defendants") Motion for Traditional and No-Evidence Summary Judgment (the "Motion"). Having considered the Motion, the evidence, and all other matters properly before it, the Court hereby GRANTS the Motion.

IT IS ORDERED that summary judgment for the City Defendants is hereby GRANTED on Plaintiffs' claims against the City Defendants; Plaintiffs' claims against the City Defendants are hereby DISMISSED with prejudice.

SIGNED this ____ day of _____, 2025.

_____
Judge Presiding

**ORDER GRANTING CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Tab

D

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 4. Executive Branch (Refs & Annos)
      Subtitle B. Law Enforcement and Public Protection
        Chapter 411. Department of Public Safety of the State of Texas (Refs & Annos)
          Subchapter H. License to Carry a Handgun

V.T.C.A., Government Code § 411.209

## § 411.209. Wrongful Exclusion of Handgun License Holder

Effective: September 1, 2021
Currentness

(a) Except as provided by Subsection (i), a state agency or a political subdivision of the state may not take any action, including an action consisting of the provision of notice by a communication described by Section 30.06 or 30.07, Penal Code, that states or implies that a license holder who is carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity unless license holders are prohibited from carrying a handgun on the premises or other place by Section 46.03, Penal Code, or other law.

(b) A state agency or a political subdivision of the state that violates Subsection (a) is liable for a civil penalty of:

  (1) not less than $1,000 and not more than $1,500 for the first violation; and

  (2) not less than $10,000 and not more than $10,500 for the second or a subsequent violation.

(c) Each day of a continuing violation of Subsection (a) constitutes a separate violation.

(d) A resident of this state or a person licensed to carry a handgun under this subchapter may file a complaint with the attorney general that a state agency or political subdivision is in violation of Subsection (a) if the resident or license holder provides the agency or subdivision a written notice that describes the location and general facts of the violation and the agency or subdivision does not cure the violation before the end of the third business day after the date of receiving the written notice. A complaint filed with the attorney general under this subsection must include evidence of the violation and a copy of the written notice provided to the agency or subdivision.

(e) A civil penalty collected by the attorney general under this section shall be deposited to the credit of the compensation to victims of crime fund established under Subchapter J, Chapter 56B, Code of Criminal Procedure.

(f) Before a suit may be brought against a state agency or a political subdivision of the state for a violation of Subsection (a), the attorney general must investigate the complaint to determine whether legal action is warranted. If legal action is warranted, the attorney general must give the chief administrative officer of the agency or political subdivision charged with the violation a written notice that:

(1) describes the violation;

(2) states the amount of the proposed penalty for the violation; and

(3) gives the agency or political subdivision 15 days from receipt of the notice to cure the violation to avoid the penalty, unless the agency or political subdivision was found liable by a court for previously violating Subsection (a).

(g) If the attorney general determines that legal action is warranted and that the state agency or political subdivision has not cured the violation within the 15-day period provided by Subsection (f)(3), the attorney general or the appropriate county or district attorney may sue to collect the civil penalty provided by Subsection (b). The attorney general may also file a petition for a writ of mandamus or apply for other appropriate equitable relief. A suit or petition under this subsection may be filed in a district court in Travis County or in a county in which the principal office of the state agency or political subdivision is located. The attorney general may recover reasonable expenses incurred in obtaining relief under this subsection, including court costs, reasonable attorney's fees, investigative costs, witness fees, and deposition costs.

(h) Sovereign immunity to suit is waived and abolished to the extent of liability created by this section.

(i) Subsection (a) does not apply to a written notice provided by a state hospital under Section 552.002, Health and Safety Code.

(j) In this section, "premises" has the meaning assigned by Section 46.03, Penal Code.

**Credits**
Added by Acts 2015, 84th Leg., ch. 593 (S.B. 273), § 1, eff. Sept. 1, 2015. Amended by Acts 2017, 85th Leg., ch. 1143 (H.B. 435), §§ 5, 6, eff. Sept. 1, 2017; Acts 2019, 86th Leg., ch. 469 (H.B. 4173), § 2.44, eff. Jan. 1, 2021; Acts 2019, 86th Leg., ch. 784 (H.B. 1791), § 1, eff. Sept. 1, 2019; Acts 2021, 87th Leg., ch. 809 (H.B. 1927), § 11, eff. Sept. 1, 2021.

Notes of Decisions (12)

V. T. C. A., Government Code § 411.209, TX GOVT § 411.209
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

Tab

E



### KEN PAXTON
ATTORNEY GENERAL OF TEXAS

August 9, 2016

The Honorable Lisa Pence
Erath County Attorney
100 West Washington
Stephenville, Texas 76401

Opinion No. KP-0108

Re: Whether a nonprofit entity that has offices on land owned by a municipality may restrict the licensed carrying of handguns on the property (RQ-0097-KP)

Dear Ms. Pence:

You explain that in your county "at least two non-profit agencies . . . have offices located on land owned" by a city.[1] You further explain that those agencies are the only entities located on the specific properties in question, that no governmental offices are located on the properties, and that the city "has no authority as to the operation of the non-profit and all decisions are made by an independent board of directors." Request Letter at 1. Given these facts you ask whether handguns may be prohibited by a nonprofit entity when the entity's offices are located on property owned by a city or governmental entity. *Id.* at 2. You base your questions on section 411.209 of the Government Code and sections 30.06 and 30.07 of the Penal Code, and we will address each of these provisions in turn.

The Eighty-fourth Legislature enacted section 411.209 of the Government Code, which prohibits state agencies and political subdivisions from providing notice that a licensed handgun carrier is prohibited from entry to a location other than those articulated in the Penal Code:

> A state agency or a political subdivision of the state may not provide notice by a communication described by Section 30.06, Penal Code, or by any sign expressly referring to that law or to a concealed handgun license, that a license holder carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity unless license holders are prohibited from carrying a handgun on the premises or other place by Section 46.03 or 46.035, Penal Code.

---

[1]Letter from Honorable Lisa Pence, Erath Cty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Feb. 11, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

# APPENDIX B

TEX. GOV'T CODE § 411.209(a). A state agency or political subdivision found in violation of this provision is liable for a civil penalty administered by the attorney general. *Id.* § 411.209(b)–(h).

Relevant to your request, the prohibition in subsection 411.209(a) applies only to "a state agency or political subdivision of the state." *Id.* § 411.209(a). Section 411.209 does not address whether a private entity, including an independent nonprofit entity, may provide notice to license holders that the carrying of handguns is prohibited in its offices. If a private entity is operating jointly with a governmental entity or has been hired by the governmental entity to perform certain governmental functions, fact questions could arise about which entity effectively posted a notice prohibiting the carrying of guns. However, under the facts you describe, the private, nonprofit entity appears to have an arms-length agreement to lease city property and is not otherwise affiliated with the city. *See* Request Letter at 1. "As a general rule, a lessor relinquishes possession or occupancy of the premises to the lessee." *Levesque v. Wilkens*, 57 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2001, no pet.). In such circumstances, section 411.209 does not apply to a city that leases property to a nonprofit entity that provides notice that a license holder carrying a handgun is prohibited from entry. As long as the state agency or political subdivision leasing the property to the nonprofit entity has no control over the decision to post such notice, the state agency or political subdivision lessor would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209. *See* TEX. GOV'T CODE § 411.209(a).

Whether sections 30.06 and 30.07 of the Penal Code make it an offense for a person carrying a handgun to enter property leased by a nonprofit entity from a state agency or political subdivision is a separate question. *See* Request Letter at 1. Subsections 30.06(a) and 30.07(a) make it an offense for a license holder to carry a handgun, either concealed or openly, "on property of another without effective consent," when the license holder "received notice that entry on the property by a license holder . . . was forbidden." TEX. PENAL CODE §§ 30.06(a), .07(a). Subsections 30.06(e) and 30.07(e) create exceptions to the application of those sections if "the property on which the license holder . . . carries a handgun is owned or leased by a governmental entity and is not a premises or other place on which the license holder is prohibited from carrying the handgun under Section 46.03 or 46.035." *Id.* § 30.06(e); *see id.* § 30.07(e). We must therefore determine whether these exceptions to the offenses apply to property that is owned by a governmental entity but leased to a private, nonprofit organization.

When the Legislature enacted subsection 30.06(e), its stated focus was on local governmental entities that were prohibiting concealed handguns from public places. *See* House Research Org., Bill Analysis, Tex. S.B. 501, 78th Leg., R.S. (May 9, 2003) at 4 ("A city's ban on concealed handguns in public buildings could make it needlessly difficult for a person lawfully carrying a concealed handgun to perform necessary tasks such as paying a utility bill or renewing a car registration."). Nothing in the text of the statute itself nor in the legislative history suggests that the Legislature considered whether private entities that leased property from a governmental entity were required to allow the carrying of handguns on the property that they lease. The fact that the Legislature created a civil penalty in section 411.209 of the Government Code only for state agencies and political subdivisions provides some contextual support for the idea that the Legislature may not have intended to require private lessees of governmental property to allow handguns on that property. *See* TEX. GOV'T CODE § 411.209(a).

Nevertheless, when construing statutes, courts recognize that the words the Legislature chooses are "the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). When possible, courts will discern legislative intent from the plain meaning of the words chosen, and only when words are ambiguous will courts "resort to rules of construction or extrinsic aids." *Entergy Gulf States, Inc.*, 282 S.W.3d 433, 437 (Tex. 2009). The plain language of subsections 30.06(e) and 30.07(e) make an exception if the property on which the license holder carries a gun "is owned or leased by a governmental entity." TEX. PENAL CODE §§ 30.06(e), .07(e). These statutes make no exception to that exception for property owned by a governmental entity but leased to a private entity, and to conclude that carrying a handgun on such property is prohibited would therefore require reading language into the statute beyond what the Legislature included. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 443 (noting that courts "refrain from rewriting text that lawmakers chose"). Thus, a court would likely conclude that a license holder carrying a handgun on property that is not a premises or other place from which the license holder is prohibited from carrying under sections 46.03 or 46.035 of the Penal Code and that is owned by a governmental entity but leased to a private entity is excepted from the offenses in 30.06(a) and 30.07(a).[2]

---

[2]Such a conclusion would not necessarily preclude a private entity's claim for civil trespass. "Generally, an owner of realty has the right to exclude all others from use of the property[.]" *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012). "[E]very unauthorized entry upon land of another is a trespass[,] even if no damage is done or injury is slight." *Coastal Oil & Gas Corp. v. Garza Energy Tr.*, 268 S.W.3d 1, 12 n.36 (Tex. 2008) (quotation marks omitted). Thus, while criminal enforcement may not be available, we find no authority that prohibits the private entity from restricting entry onto that leased property for individuals carrying handguns.

## S U M M A R Y

Section 411.209 of the Government Code creates a civil penalty for a state agency or a political subdivision that provides notice that a license holder carrying a handgun is prohibited on property owned by the governmental entity unless carrying a handgun in such locations is expressly prohibited under the Penal Code. Section 411.209 applies only to a state agency or political subdivision of the State and does not address whether a private entity, including an independent nonprofit entity, may provide notice to license holders that the carrying of handguns is prohibited in the private entity's offices. As long as the state agency or political subdivision leasing the property to the private entity has no control over the decision to post such notice, the state agency or political subdivision lessor would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209.

A court would likely conclude that a license holder who carries a handgun on property that is owned by a governmental entity but leased to a private entity and that is not a premises or other place from which the license holder is prohibited from carrying a handgun under sections 46.03 or 46.035 of the Penal Code is excepted from the offenses in subsections 30.06(a) and 30.07(a) of the Penal Code.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Tab
F

## Chart of Key Firearm Statutes

**Tex. Penal Code § 30.05: Criminal Trespass**

Criminal trespassing = entering or remaining on property of another without consent if:

(1) the actor had notice that entry was forbidden; or

(2) the actor received notice to depart but failed to do so.

Allows posting of a notice that firearms are prohibited.

Provides a defense to prosecution if:

(1) the basis on which entry was forbidden was that entry with a handgun was forbidden; and

(2) the person had a license to carry a handgun.

**Tex. Penal Code § 30.06: Trespass by License Holder with a Concealed Handgun**

Special category of criminal trespassing for a person with license to carry a concealed handgun

Criminal trespassing =

(1) carrying a concealed handgun on the property of another without consent; and

(2) after notice that entry with a concealed handgun was forbidden.

Does *not apply* if the property is owned by a governmental entity and does not fall under a specific prohibition under Section 46.03.

**Tex. Penal Code § 30.07: Trespass by License Holder with an Openly Carried Handgun**

Special category of criminal trespassing for a person with license to carry a handgun openly

Criminal trespassing =

(1) openly carrying a handgun on the property of another without consent

(2) after notice that entry with an openly carried handgun was forbidden.

Does *not apply* if the property is owned by a governmental entity and does not fall under a specific prohibition under Section 46.03.

**Tex. Penal Code § 46.03: Places Weapons Prohibited**

Provides list of specific locations where firearms are prohibited—regardless of owner, such as:

schools; election polls; courts; racetracks; airports; prisons; bars; sporting events; hospitals; and amusement parks

**Tex. Gov't Code § 411.209: Wrongful Exclusion of Handgun License Holder**

A political subdivision ***may not take any action that states or implies that a license holder who is carrying a handgun is prohibited from entering or remaining on property that is owned or leased by the governmental entity*** — other than property subject to a specific prohibition under Section 46.03 or other law.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 109888642
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellee State Fair of Texas' Appellee Brief
Status as of 1/9/2026 4:36 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph Alrrobali | | airrobali@tillotsonlaw.com | 1/9/2026 4:32:06 PM | SENT |
| Bryan Neal | 788106 | Bryan.Neal@hklaw.com | 1/9/2026 4:32:06 PM | SENT |
| James Harris | 9065400 | jim.harris@hklaw.com | 1/9/2026 4:32:06 PM | SENT |
| Melissa Juarez | | melissa.juarez@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| Kira Lytle | | klytle@tillotsonlaw.com | 1/9/2026 4:32:06 PM | SENT |
| Sherri Rodgers | | sherri.rodgers@hklaw.com | 1/9/2026 4:32:06 PM | SENT |
| Ernest Garcia | | ernest.garcia@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| Catherine Hughes | | catherine.hughes@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| Nathaniel Buchheit | | nbuchheit@tillotsonlaw.com | 1/9/2026 4:32:06 PM | SENT |
| Paul Pruneda | | paul.pruneda@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| Megan Coker | | mcoker@tillotsonlaw.com | 1/9/2026 4:32:06 PM | SENT |
| Anne Johnson | | ajohnson@tillotsonlaw.com | 1/9/2026 4:32:06 PM | SENT |
| TJP Service | | tillotsonjohnsonpatton@gmail.com | 1/9/2026 4:32:06 PM | SENT |
| Meridith Fischer | | Meridith.Fischer@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| Connor Ellington | | connor@tonymcdonald.com | 1/9/2026 4:32:06 PM | SENT |
| Connor Ellington | | connor@tonymcdonald.com | 1/9/2026 4:32:06 PM | SENT |
| Connor Ellington | | connor@tonymcdonald.com | 1/9/2026 4:32:06 PM | SENT |
| Steven Ogle | | Steven.Ogle@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| Tony McDonald | | Tony@tonymcdonald.com | 1/9/2026 4:32:06 PM | SENT |
| Jeffrey Tillotson | 20039200 | jtillotson@tillotsonlaw.com | 1/9/2026 4:32:06 PM | SENT |
| Holly Dudrick | | holly.dudrick@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| William Cole | | William.Cole@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 109888642
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellee State Fair of Texas' Appellee Brief
Status as of 1/9/2026 4:36 PM CST

Case Contacts

| William Cole | | William.Cole@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
|---|---|---|---|---|
| William Peterson | | William.Peterson@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| Bryan Neal | | bryan.neal@hklaw.com | 1/9/2026 4:32:06 PM | SENT |
| Robert  B.Smith | | Robert@Smith-Firm.com | 1/9/2026 4:32:06 PM | SENT |
| Canon ParkerHill | | canon.hill@oag.texas.gov | 1/9/2026 4:32:06 PM | SENT |
| Devlin Browne | | dbrowne@tillotsonlaw.com | 1/9/2026 4:32:06 PM | SENT |
| Dina W.McKenney | | dina.mckenney@hklaw.com | 1/9/2026 4:32:06 PM | SENT |